**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>**v.**<br><br>**DA'SHAUN JOHNSON,**<br><br>**Defendant.** | **Case No. 25-CR-00367 (JMC)** |

**GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this Memorandum in Aid of Sentencing. The Defendant, Da'Shaun Johnson, is before this Court after pleading guilty to Unlawful Possession of a Firearm and Ammunition by a Person Convicted of a Crime Punishable by Imprisonment for a Term Exceeding One Year, in violation of 18 U.S.C. § 922(g)(1) (Count 1), after police found a firearm in the car that he was driving.

For the reasons that follow, the Government respectfully requests that the Court sentence Defendant Johnson to a term of 10 months' imprisonment and three years of supervised release. This sentence is appropriate given the Defendant's recent criminal history of unlawful firearms possession.

## I.    FACTUAL BACKGROUND

The factual proffer to which the Defendant agreed as part of his December 17, 2025 guilty plea establishes the following uncontested facts:

On September 6, 2025, at approximately 8:48 p.m., officers with the United States Park Police (USPP) recovered a firearm from under the driver's seat of the vehicle that the Defendant, Da'Shaun Johnson, was driving. The firearm was loaded with 10 rounds of 9mm ammunition. The

firearm and ammunition recovery occurred after a traffic stop was conducted at the intersection of Alabama Avenue SE and 10th Place SE in Washington, DC. The Defendant's possession of the firearm and ammunition was voluntary and on purpose, and not by mistake or accident.

The Defendant was previously convicted in Upper Marlboro, Maryland Case No. C-16-CR-25-000331 for Unlawful Possession of a Firearm in a Vehicle and sentenced to 3 years confinement with 3 years suspended, followed by 2 years of supervised probation. Therefore, defendant Johnson was aware at the time of his arrest in this case that he had a prior conviction for a crime punishable by more than one year.

There are no ammunition manufacturers in the District of Columbia. Therefore, the ammunition in this case would have traveled in interstate commerce.

## II.    PROCEDURAL HISTORY

On November 20, 2025, the U.S. Attorney's Office for the District of Columbia filed a single-count Information charging Da'Shaun Johnson with Unlawful Possession of Ammunition by a Person Convicted of a Crime Punishable by Imprisonment for a Term Exceeding One Year, in violation of 18 U.S.C. § 922(g)(1).

On December 17, 2025, Defendant Johnson pled guilty to Count One of the Information, pursuant to a written plea agreement with the Government.

## III.    LEGAL STANDARD

Although the Sentencing Guidelines are advisory, under *United States v. Booker*, a sentencing court "must consult those Guidelines and take them into account when sentencing." 543 U.S. 220, 264 (2005); *United States v. Brown*, 892 F.3d 385, 399 (D.C. Cir. 2018). The Supreme Court has noted that while the Guidelines provide "the starting point and the initial benchmark" for sentencing, the district court should consider all the § 3553(a) factors. *Gall v.*

*United States*, 552 U.S. 38, 49–50 (2007).  The Guidelines' recommended sentencing range will ordinarily "reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives." *Kimbrough v. United States*, 552 U.S. 85, 108–09 (2007).  The listed factors in 18 U.S.C. § 3553(a) include the following:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed –
>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>> (B) to afford adequate deterrence to criminal conduct;
>> (C) to protect the public from further crimes of the defendant; and
>> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3) the kinds of sentences available;
>
> (4) the kinds of sentence and the sentencing range established for –
>> (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines –
>>> (i) issued by the Sentencing Commission ...; and
>>> (ii) that, . . . are in effect on the date the defendant is sentenced; ...
>
> (5) any pertinent policy statement –
>> (A) issued by the Sentencing Commission ... and
>> (B) that, . . . is in effect on the date the defendant is sentenced.
>
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
>
> (7) the need to provide restitution to any victims of the offense.

## IV.    ANALYSIS OF THE U.S. SENTENCING GUIDELINES

The parties concur with the U.S. Probation Office's (USPO) guideline calculation. Therefore, there is no dispute concerning the guidelines calculation and guideline range. The parties and Probation concur that the Defendant's total offense level is 12 and his criminal history category is I, resulting in a guidelines range of 10 to 16 months' imprisonment.

## V.    THE GOVERNMENT'S SENTENCING RECOMMENDATION

The crime at issue here merits 10 months of incarceration. In this case, sentencing is guided by 18 U.S.C. § 3553(a). As listed above, some of the factors this Court must consider include: the nature and circumstances of the offense, § 3553(a)(1); the history and characteristics of the defendant, *id.*; the need for the sentence to afford adequate deterrence, § 3553(a)(2)(B); and the desire to avoid unwarranted sentence disparities, § 3553(a)(6).

### A.  Nature and Circumstances of the Offense

The nature and circumstances of this offense are serious and warrant a lengthy sentence of imprisonment.

As a threshold matter, the Defendant's possession of a loaded handgun was an inherently dangerous act that placed the community at risk.  *See, e.g.*, United States v. Cole, 459 F. Supp. 3d 116, 120 (D.D.C. 2020) (noting that a loaded firearm "has the great potential to escalate into violence," particularly when a defendant's prior convictions indicate a predilection for violence); *United States v. Riggins*, 456 F. Supp. 3d 138, 144 (D.D.C. 2020) ("[T]he possession of a firearm, especially while seemingly on a drug such as PCP, presents a serious danger to the community."); *United States v. Gassaway*, No. 21-cr-550 (RCL), 2021 U.S. Dist. LEXIS 175978 at *9-10 (D.D.C. Sept. 16, 2021) (collecting cases in this district holding that unlawful firearm possession is dangerous to the public); *United States v. Howard*, No. 20-mj-181 (BAH), 2020 U.S. Dist. LEXIS

172978, 2020 WL 5642288, at *3 (D.D.C. Sept. 21, 2020) ("Illegally possessing a concealed firearm in public where other people are congregated, as alleged, poses an inherent risk of danger to the community."). While this case does not involve the Defendant's use of the recovered firearm, people carry guns because they intend to use them. While the Defendant's crime did not result in any direct violence against another, unlawful possession can lead to dangerous consequences, thereby underscoring the need to take such crimes seriously.



**Figure 1: Glock 43x, 9mm (S/N: BUZV577); 10 rounds in 10-round capacity magazine.**

Here, the Defendant's firearm had troubling characteristics. The Defendant pled guilty to possessing a hybrid weapon, consisting of parts from a Glock 43 and a privately made firearm ("PMF") (commonly referred to as a ghost gun), fully loaded with 10 rounds of 9mm ammunition in a 10-round capacity magazine. *See* Figure 1, above. PMFs are firearms that have been completed, assembled, or produced by a person without a manufacturing license. *See* Bureau of Alcohol, Tobacco, Firearms and Explosives, Privately Made Firearms (May 19, 2025)

www.atf.gov/firearms/privately-made-firearms. PMFs make it easier for those, like the Defendant, prohibited from possessing a gun to obtain one and are often used to evade law enforcement. *Id*. The danger of PMFs stems from their difficulty to be traced and linked to the crimes they were used in. *See id.* From 2016 through 2021 there were approximately 45,240 suspected PMFs recovered from potential crime scenes that were reported to ATF, including 692 homicides or attempted homicides. *Id.* This particular firearm was created from parts of a Glock 43 and other PMF parts, making it untraceable for law enforcement. The Defendant cannot possess a firearm legally due to his status as a felon. Therefore, he had an illicit source to obtain the firearm, further demonstrating the potential dangerousness associated with the weapon and the Defendant's prior actions.

### B.  The History and Characteristics of the Defendant

Although Defendant Johnson has accepted responsibility for his actions in this case, a 10-month sentence is appropriate given the Defendant's history of recidivism. The instant case is not the Defendant's first firearms conviction for unlawfully possessing a PMF – it is his second.

In May 2025, the Defendant was convicted of possession of a loaded handgun in a vehicle in Upper Marlboro, Maryland. There, the Defendant had a black Polymer 80 handgun (no serial number) that was loaded with 24 rounds in an extended magazine and was sentenced to three years' incarceration (all suspended) and two years' probation after he pled guilty. *See* PSR 6, ¶ 29.  What is clear is that the Defendant knows how to secure firearms that are untraceable as he has pled guilty to possessing two of them. In addition, the Defendant's decision to possess this firearm was a violation of the terms of his probation.

The Defendant cannot argue that his previous conviction was a product of his past.  He was sentenced less than four months before this case and has been in direct contact with his probation

officer. Yet, despite knowing that he was not supposed to possess a firearm, he disregarded the Maryland court's directives and got caught possessing another one.

Given the Defendant's criminal history and the short period between this case and his previous conviction, a 10-month period of incarceration is warranted here.

### C.  The Need for the Sentenced Imposed to Afford Adequate Deterrence

As noted previously, this is the Defendant's second firearm offense. A 10-month sentence is warranted here because the Defendant accrued two firearms offenses in rapid succession. He pled guilty to his first firearm offense on May 29, 2025 and then less than four months later – on September 6, 2025 – the Defendant was arrested for the instant offense. The fully suspended sentence the Defendant received in his Maryland case was not enough to dissuade him from unlawfully carrying a firearm. A guideline-compliant sentence in this case is needed to send the message to the Defendant that he is not permitted to carry firearms. Accordingly, the Defendant should be sentenced to a 10-month term of incarceration.

### D.  The Desire to Avoid Unwarranted Sentence Disparities

Finally, one of the goals of the guidelines is to avoid sentence disparities among similarly situated defendants. The Government's requested sentence is reasonable and is in line with the sentences imposed on similarly situated defendants.

According to data collected by the United States Sentencing Commission, during the last five fiscal years (FY2020-2024), there were 994 defendants whose primary guideline was §2K2.1, with a Final Offense Level of 12 and a Criminal History Category of I. For the 683 defendants (69%) who received a sentence of imprisonment, the average length of imprisonment imposed was 9 months and the median length of imprisonment imposed was 10 months. *See* PSR at 19, ¶ 77.

The Defendant's actions warrant a sentence that is in line with the sentence served by other

7

similarly situated defendants, and sentencing the Defendant to less time creates a sentence disparity that the Guidelines seek to avoid.

## **CONCLUSION**

For the foregoing reasons, the Government respectfully requests that the Court sentence Defendant Johnson to a term of 10 months' imprisonment on Count 1, to be followed by three years of supervised release.

Respectfully submitted,

JEANINE FERRIS PIRRO
UNITED STATES ATTORNEY

By:      /s/ *Jared English*
JARED ENGLISH
Assistant United States Attorney
D.C. Bar No. 1023926
United States Attorney's Office
601 D Street, N.W.
Washington, D.C. 20530
Telephone: 202-465-0089
Email: Jared.English@usdoj.gov